UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 9:25-cv-80389-DAMIAN

**ELEAZER HERNANDEZ-PEREZ**,

    Petitioner,

v.

**FLORIDA DEPARTMENT OF CORRECTIONS**, *Ricky Dixon, Secretary of FDOC,*

    Respondent.
_____/

**ORDER ON PETITION FOR WRIT OF *HABEAS CORPUS***

**THIS CAUSE** came before the Court upon the *pro se* Petition for Writ of *Habeas Corpus* ("Petition"), filed pursuant to 28 U.S.C. § 2254 by Eleazer Hernandez-Perez ("Hernandez-Perez" or "Petitioner"). [ECF No. 1]. In the Petition, Hernandez-Perez attacks the constitutionality of his convictions and sentences entered in the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, in *State of Florida v. Hernandez-Perez*, No. 50-2015-CF-004248 (Fla. 15th Cir. Ct. 2015). The Florida Department of Corrections ("Respondent") filed a Response ("Response") [ECF No. 17] to the Petition and the Court's Order to Show Cause [ECF No. 6], along with a supporting appendix [ECF No. 18] and state court transcripts [ECF No. 19, Trial Transcripts, hereinafter, T. at ___]. Hernandez-Perez then filed his Traverse to the State's Response ("Traverse"). [ECF No. 22]. The Petition is now ripe for review.

THE COURT has considered the Petition and the above-referenced filings, the pertinent portions of the record, and relevant legal authority and is otherwise fully advised. For the reasons that follow, the Petition is denied.

## I.   BACKGROUND

### A.  *The Charges.*

On January 25, 2016, the State charged Hernandez-Perez by a second amended information with three counts of sexual battery on a person less than twelve years of age (Counts 1 through 3). [ECF No. 18-1 at 2–3].

### B.  *Trial And Sentencing.*

Hernandez-Perez proceeded to trial after rejecting the State's plea deal. *See* Petition [ECF No. 1 at 16]. On October 4, 2019, the jury found Hernandez-Perez guilty on Counts I and III, and guilty of battery as to Count II, a lesser included offense. [ECF No. 18-1 at 5–6]. The trial court sentenced Hernandez-Perez to concurrent life sentences in prison without parole and to time-served on Count II.[1] *Id.* at 12–17. The court also designated Hernandez-Perez as a sexual predator. *Id.* at 19.

### C.  *Direct Appeal And Collateral Proceedings.*

In 2020, Hernandez-Perez filed a direct appeal in Florida's Fourth District Court of Appeal ("Fourth DCA"). [ECF No. 18-1 at 28–45]. On appeal, he raised two trial court errors: (1) the trial court reversibly erred by failing to instruct the jury that sexual battery could not be accomplished by penile contact with the leg or stomach, where the jury asked that specific question after being instructed on the elements of sexual battery; and (2) the trial court abused

---

[1] The Court entered a corrected sentencing order as to Count II and allotted Petitioner 1,613 days as credit for time incarcerated before imposition of the sentence. [ECF No. 18-1 at 116].

2

its discretion by failing to hold a *Daubert*[2]/Fla. Stat. § 90.702 hearing concerning the State's expert witness. *Id.* at 39–45. On March 31, 2021, the Fourth DCA affirmed in *Hernandez-Perez v. State*, 320 So. 3d 766 (Fla. 4th DCA 2021) (per curiam). On the first issue, the court reasoned, "[T]he trial court has discretion in answering a jury question, and it may answer a question directly or refer jurors to standard instructions." *Id.* at 766 (citing *Perriman v. State*, 731 So. 2d 1243, 1246–47 (Fla. 1999)). On the second issue, the court found that Hernandez-Perez failed to preserve the *Daubert* inquiry. *Hernandez-Perez*, 320 So. 3d at 766. The Fourth DCA issued its mandate on June 4, 2021. [ECF No. 18-1 at 96].

      Hernandez-Perez next filed a petition for belated discretionary review of the Fourth DCA's holding before the Florida Supreme Court. *See id.* at 98–100. The Florida Supreme Court declined to accept jurisdiction and denied the petition. *Id.* at 102. Hernandez-Perez returned to the state trial court on January 25, 2022, with a motion to correct jail credit, which the court granted in part and entered a corrected sentencing order on April 11, 2022, *nunc pro tunc*. *Id.* at 105–16. He then filed another appeal in the Fourth DCA alleging ineffective assistance of appellate counsel in the previous appeal on May 9, 2022. *Id.* at 118–38. In that brief, and of relevance here, he argued that his appellate lawyer failed to raise the issue of the trial judge denying his motion to disqualify, despite the judge's alleged hostility toward his counsel. *Id.* at 129. The Fourth DCA affirmed without an opinion. *Id.* at 140.

      On April 20, 2023, Hernandez-Perez filed his first motion for post-conviction relief in the state trial court under Florida Rule of Criminal Procedure 3.850. *Id.* at 149–63. In that motion, he raised three grounds of ineffective assistance of counsel. *See id.* Hernandez-Perez then filed a motion to amend, which the court granted. *Id.* 169–75.

---

[2] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

In that amended motion, he raised four grounds for relief:

(1) trial counsel was ineffective for declining the State's plea offer and proceeding to trial, which violated the Florida and U.S. constitutions;

(2) trial counsel was ineffective for failing to file a motion for a new trial after the jury found him guilty, in contradiction to the weight of the evidence, and the trial court provided an erroneous jury instruction;

(3) trial counsel was ineffective for failing to move for appointment of a medical expert to challenge the State's claims; and

(4) trial counsel was ineffective by failing to properly investigate and present an alibi witness to testify at trial.

*Id.* 176–94. The trial court denied the motion on June 14, 2024. *Id.* at 244. Petitioner appealed the ruling, which the Fourth DCA affirmed *per curiam*, following which it and issued the mandate on January 23, 2025. *Id.* at 248–66.

D. **The Instant Petition.**

On March 24, 2025, Hernandez-Perez initiated the instant proceedings under 28 U.S. § 2254. *See generally* Petition. Construing the Petition liberally, consistent with *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972), Hernandez-Perez presents the following claims for relief:

**Claim One**: The trial testimony of expert witness, Dr. Kevin McElfresh, was improperly admitted, and the trial court abused its discretion when it failed to conduct a hearing to determine the reliability of the expert opinion offered, contrary to *Daubert*. Petition at 12.

**Claim Two**: Ineffective assistance of counsel for failing to accept the State's plea deal. *Id.* at 15.

**Claim Three:**[3] Ineffective assistance of counsel for failing to present judicial bias claim on direct appeal. *Id.* at 19.

This Court addresses Petitioner's claims for relief below.

## II.   EXHAUSTION AND STATUTE OF LIMITATIONS

Respondent concedes that this Petition appears timely. *See* [ECF No. 17 at 5–7] (citing *Day v. McDonough*, 547 U.S. 198 (2006)). Respondent does, however, contest that Hernandez-Perez did not exhaust his state-court remedies before seeking federal *habeas* relief. *See* [ECF No. 17 at 7–9]. Nevertheless, Respondent addressed all claims on the merits. *See id.* at 38–44, 47–50, 52–57. This Court will do the same, and, therefore, need not decide the issue of exhaustion. *See Smith v. Crosby*, 159 F. App'x 76, 79 n.1 (11th Cir. 2005) (per curiam) (holding that a § 2254 petition "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state").

## III.   LEGAL STANDARDS

### A. Deference Under Section 2254.

This Court's review of a state prisoner's federal petition for *habeas corpus* is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214. *See Ledford v. Warden, GDCP*, 818 F.3d 600, 642 (11th Cir. 2016), *abrogation recognized on other grounds by Smith v. Comm'r, Ala. Dep't of Corr.*, 67 F.4th 1335, 1348 (11th Cir. 2023). "The purpose of [the] AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." *Ledford*, 818 F.3d at 642 (quoting *Greene v. Fisher*, 565 U.S. 34, 38 (2011)). Federal *habeas corpus* review of final state court decisions is "'greatly

---

[3] Petitioner joined Claims Two and Three into one extensive argument. *See* Petition at 15–21. This Court addresses these combined claims as separate claims for clarity.

5

circumscribed' and 'highly deferential,'" *Ledford*, 818 F.3d at 642 (quoting *Hill v. Humphrey*, 662 F.3d 1335, 1343 (11th Cir. 2011)), and is generally limited to the record that was before the state court that adjudicated the claim on the merits, *Ledford*, 818 F.3d at 642 (citing *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011)).

The federal *habeas* court is first tasked with identifying the last state court decision, if any, that adjudicated the claim on the merits. *See Marshall v. Sec'y, Fla. Dep't of Corr.*, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court is not required to issue an opinion explaining its rationale, because even the summary rejection of a claim, without explanation, qualifies as an adjudication on the merits which warrants deference. *See Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008); *see also Wilson v. Sellers*, 584 U.S. 122, 125 (2018); *Sexton v. Beaudreaux*, 585 U.S. 861, 964–65 (2018).

Where the claim was "adjudicated on the merits" in the state forum, Section 2254(d) prohibits relitigating the claim unless the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" [4] or, (2) "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d); *Harrington*, 562 U.S. at 97–98; *see also Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). When relying on Section 2254(d)(2), a federal court can grant relief if the state court rendered an erroneous factual determination. *Tharpe v. Warden*, 834 F.3d 1323, 1337 (11th Cir. 2016).

This standard is intentionally difficult to meet. *Harrington*, 562 U.S. at 102. Because the "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims

---

[4] "Clearly established Federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the Supreme Court at the time the state court issues its decision. *White v. Woodall*, 572 U.S. 415, 419 (2014) (citing *Williams*, 529 U.S. at 412).

have been adjudicated in state court," *Burt v. Titlow*, 571 U.S. 12, 19 (2013), "federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree[,]'" *Tharpe*, 834 F.3d at 1338 (11th Cir. 2016) (quoting *Harrington*, 562 U.S. at 102).

### B. Ineffective Assistance Of Trial Counsel.

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to the assistance of counsel during criminal proceedings against them. *Strickland v. Washington*, 466 U.S. 668, 684–85 (1984). When assessing counsel's performance under *Strickland*, the court employs a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

To prevail on a claim of ineffective assistance of counsel, the petitioner must demonstrate that: (1) counsel's performance was deficient, and (2) the petitioner suffered prejudice as a result of that deficiency. *Id.* at 687.

To establish deficient performance, the petitioner must show that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence and "fell below an objective standard of reasonableness." *Id*. at 687–88; *see also Cummings v. Sec'y for Dep't of Corr.*, 588 F.3d 1331, 1356 (11th Cir. 2009). The court's review of counsel's performance should not focus on what is possible, prudent, or appropriate but should focus on "what is constitutionally compelled." *Burger v. Kemp*, 483 U.S. 776, 794 (1987).

Regarding the prejudice component, the Supreme Court has explained that "[t]he defendant must show that there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A court need not address both prongs of *Strickland* if the defendant makes an insufficient showing on one of the prongs. *Id.* at 697. Further, counsel is not ineffective for failing to raise non-meritorious issues. *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001). Nor is counsel required to present every non-frivolous argument. *Dell v. United States*, 710 F.3d 1267, 1282 (11th Cir. 2013).

Lastly, a Section 2254 Petitioner must provide factual support for his or her contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1332–34 (11th Cir. 2012).

## IV.   DISCUSSION

With the foregoing in mind, this Court addresses each of the grounds asserted in the Petition in turn.

### A. Claim One – Trial Court's Failure To Conduct A Daubert Hearing.

In Claim One, Hernandez-Perez alleges that the trial court abused its discretion when it failed to conduct a *Daubert* hearing and thereby violated his due process rights. Petition at 12, 14. He avers that the Court needed first to gauge whether Dr. McElfresh, the State's "population geneticist," was eligible to testify. *See id.* at 14. The record reflects that Hernandez-Perez's counsel objected to Dr. McElfresh offering scientific opinions and appears to have moved to disqualify the expert from testifying. *See id.* Hernandez-Perez's counsel explained to the court that Dr. McElfresh was "sanctioned for tactics and methods used by the Broward Crime lab" since he had written a letter endorsing standards concerning Y-STR DNA that the science community later discredited. *Id.* at 14 n.4. Moreover, Hernandez-

8

Perez's counsel also argued that Dr. McElfresh failed to accept "norms within his profession, and has made mathematical errors in other cases." *Id.* at 14. The court overruled the objections, did not hold a *Daubert* hearing, and explained that counsel would have a "full opportunity to cross [Dr. McElfresh]." (T. at 407).

Ultimately, Dr. McElfresh testified about his "mathematical analysis looking at the 'electropherograms that are the results from the case.'" *Id.* at 414. Put differently, Dr. McElfresh offered a damaging opinion for the jury in which he opined that Petitioner's DNA matched what was taken from the victim's vaginal swabs. *See id.* at 417). Petitioner believes that the court's failure to hold a *Daubert* hearing offended his fair trial rights. Petition at 14. This argument is unpersuasive for the following reasons.

Initially, "the holding in *Daubert* is not premised on the Constitution." *Black v. Thomas*, No. 1:04-CV-567 MEF, 2006 WL 2547405, at *7 n.1 (M.D. Ala. Aug. 31, 2006). Moreover, "A state trial court has wide discretion in determining whether to admit evidence at trial, and may exclude material evidence when there is a compelling reason to do so." *Lynd v. Terry*, 470 F.3d 1308, 1314 (11th Cir. 2006) (citation omitted); *see also United States v. Hansen*, 262 F.3d 1217, 1234 (11th Cir. 2001) (noting that *Daubert* hearings at the federal level are discretionary). Only when evidentiary flaws "'so infused the trial with unfairness as to deny due process of law' is habeas relief warranted." *Black*, 2006 WL 2547405, at *7 n.1 (quoting *Lisenba v. California,* 314 U.S. 219, 228 (1941)). And the district court's review of state court evidentiary rulings through a habeas corpus petition is limited to a determination of "'whether the error . . . den[ied] petitioner his right to a fair trial.'" *Lopez v. Jones*, No. 16-CV-62836, 2017 WL 1541428, at *13 (S.D. Fla. Apr. 28, 2017) (Bloom, J.) (quoting *Futch v. Dugger*, 874 F.2d 1483, 1487 (11th Cir. 1989), *aff'd sub nom. Lopez v. Sec'y, Dep't of Corr.*, 743 F. App'x 306

(11th Cir. 2018)); *see also Mills v. Singletary*, 161 F.3d 1273, 1289 (11th Cir. 1998) (remarking that a grant for federal habeas relief should not be based on an evidentiary finding "unless the ruling affects the fundamental fairness of the trial.") (citation omitted). The evidence at issue "must be inflammatory or gruesome, and so critical that its introduction denied petitioner a fundamentally fair trial." *Futch*, 874 F.2d at 1487 (citation omitted).

With the foregoing in mind, this Court considers Dr. McElfreh's testimony. On review, the evidence at issue here—irrespective of the admissibility at trial and possible exhaustion issues[5]—was not inflammatory or gruesome, nor was it a crucial, critical, highly significant factor in Hernandez-Perez's conviction. *See id.* at 1487. The trial court's failure to hold a *Daubert* hearing is not a basis for relief. First, the trial court likely would have found Dr. McElfresh a credible expert under Fla. Stat. § 90.702, which codified the *Daubert* standard into State law. [ECF No. 17 at 39] (citing *DeLisle v. Crane Co.*, 258 So. 3d 1219, 1227 (Fla. 2018)). The statute permits scientific, technical, or other specialized knowledge into trial if the expert witness demonstrates that: "(1) The testimony is based upon sufficient facts or data; (2) The testimony is the product of reliable principles and methods; and (3) The witness has applied the principles and methods reliably to the facts of the case." Fla. Stat. § 90.702(1)–(3) (2013).

Dr. McElfresh discussed his education and career, which established his scientific knowledge and experience in DNA analysis. *See* (T. at 409–11). He explained in court that he is a population geneticist by training and now focuses on projects "related to the mathematical analysis and interpretation of mixtures of DNA and various types of DNA as they relate both to forensics and medical problems." *Id.* at 409. Moreover, he stated in court that his entire

---

[5] *See Hernandez-Perez*, 320 So. 3d at 766.

10

career has focused on the application of DNA in criminal cases. *Id.* at 410. Dr. McElfresh's testimony was relevant to issues in the case, as he "receives a DNA profile, he compares it to a reference sample to determine how frequently that profile would occur in the population." Response [No. 17 at 41] (citing T. at 412–18). He described the analysis he conducted in this case to formulate the relevant statistics, which involved comparing the data he received with information from a database containing approximately fifty-six thousand individuals. (T. at 421).

Not only was Dr. McElfresh's testimony relevant to the case and likely satisfied Fla. Stat. § 90.702, but Hernandez-Perez's counsel conceded that "there's nothing about the statistical analysis he did . . . which make a good basis to file a motion to exclude him." *Id.* at 406. Instead, counsel raised objections in an effort "to make a record that should Dr. McElfresh be further discredited later on, [ ] my client could potentially raise those issues on appeal." *Id.* Hernandez-Perez argues that Dr. McElfresh's testimony was still tainted by his "documented history of mathematical errors and discredited methodology." Traverse at 4. He also raises Dr. McElfresh's endorsement of sanctioned standards from Broward County. *Id.* The trial court, however, assured counsel that "[w]hat happened in other cases is not going to come in in this case," (T. at 407), while also giving counsel the full opportunity to cross-examine Dr. McElfresh, during which counsel *did* challenge the expert's experience, testing, and reliability in the presence of a jury, *see id.* at 424–40; *see also California v. Green*, 399 U.S. 149, 158 (1970) (praising cross-examination as the "greatest legal engine ever invented for the discovery of truth.").

Importantly, notwithstanding Dr. McElfresh's testimony, the prosecution also presented other relevant evidence that contradicted Hernandez-Perez's defense, including: (1)

the victim's trial testimony and her Child Protection Team ("CPT") interviews detailing her sexual abuse; (2) a Palm Beach County Sheriff's Office's DNA Unit employee's testimony that one of the swabs from the victim's underwear had a DNA profile that largely matched Hernandez-Perez's DNA profile; and (3) Hernandez-Perez's incriminating jail calls. [ECF No. 17 at 43–44].

Given the extensive testimony from Dr. McElfresh, defense counsel's full opportunity to cross-examine Dr. McElfresh, and the panoply of other incriminating evidence presented at trial, Hernandez-Perez has not shown a basis to find that the trial court abused its discretion by not holding a *Daubert* hearing. The state court's decision was not contrary to or an unreasonable application of federal constitutional principles, and Hernandez-Perez offers no valid reason for it to disturbed here. *See Williams*, 529 U.S. at 413. Therefore, this Court finds Claim One of the Petition to be without merit.

### B. Claim Two – Ineffective Assistance For Advising Petitioner Not To Accept A Plea Deal.

In Claim Two, Hernandez-Perez asserts that his trial attorney rendered ineffective assistance of counsel in violation of his Sixth and Fourteenth Amendment rights when his counsel advised him not to accept the State's plea deal. Petition at 16.

Hernandez-Perez posits that his counsel's advice against accepting a favorable plea offer was ineffective and based on "an unreasonable assessment of the strength of the state case." *Id.* The State offered Hernandez-Perez a plea deal for a total of eighteen years' imprisonment, with four years of time served and a mandatory designation as a sexual predator. *Id.* at 17. Hernandez-Perez states that he discussed the plea offer with his counsel and asked whether he should accept. *Id.* Hernandez-Perez acknowledges that his counsel advised him that acceptance of the offer "was 'completely' up to [him]." *Id.* Still, Hernandez-

Perez did not like the mandatory sexual predator designation, and he claims his "counsel made several remarks reflecting a personal preference to proceed to trial." *Id.*

According to Hernandez-Perez, his counsel explained that he has "beaten" similar cases with stronger prosecutorial evidence than here. *Id.* Counsel remarked that he could easily impeach the victim and exclude the two CPT video interviews from evidence. *Id.* Hernandez-Perez claims he asked his counsel if he could win the case, to which counsel responded: "[W]ell, no one can say for sure," but his case seemed "better than average" for an acquittal or, at worst, the jury might find him guilty of misdemeanor battery. *Id.* Hernandez-Perez rejected the plea offer, "[b]ased solely on counsel's assessment . . . ." *Id.* He raised an ineffective assistance of counsel claim concerning the plea deal in the Rule 3.850 motion, which the trial court denied, and the Fourth DCA affirmed. [ECF No. 18-1 at 244, 264].

Given that "plea bargains have become so central to the administration of the criminal justice system[,] . . . defense counsel ha[s] responsibilities in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages." *Missouri v. Frye*, 566 U.S. 134, 143 (2012). To establish the *Strickland* prejudice prong related to a rejected plea due to an attorney's alleged misadvice, a petitioner must allege and prove with a reasonable probability that: "(1) the defendant 'would have accepted the offer had counsel advised the defendant correctly, (2) the prosecutor would not have withdrawn the offer, (3) the court would have accepted the offer, and (4) the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.'" *George v. Jones*, No. 17-14005-CIV, 2018 WL 10647359, at *10 (S.D. Fla. Jan. 30, 2018)

(White, Mag.) (quoting *Alcorn v. State*, 121 So. 3d 419, 430 (Fla. 2013)), *report and recommendation adopted*, No. 2:17-CV-14005, 2018 WL 10647238 (S.D. Fla. Feb. 27, 2018).

Here, there is little to establish prejudice related to this rejected plea deal. First, Hernandez-Perez fails to cite anything that would show his willingness to accept the offer but for counsel's alleged deficiency. His own facts in the Petition clearly illustrate that his counsel offered candid advice about the plea, and that they discussed the benefits and drawbacks of declining the offer and the strengths and weaknesses of the State's case. *See* Petition at 17; Response at 46 (citation omitted); *see also* [ECF No. 18-1 at 178] (stating in his Rule 3.850 motion that Petitioner had a "heated" discussion with counsel on whether to take the plea deal and be designated a sexual predator); *Padilla v. Kentucky*, 559 U.S. 356, 370 (2010) (highlighting the "critical obligation" for counsel to advise their clients of the "the advantages and disadvantages of a plea agreement.") (citation and quotation marks omitted). Eventually, counsel told the court that "Defendant acknowledges his understanding of the plea offer, but . . . wants to go to trial." [ECF No. 18 at 179].

Second, counsel's expressions of general feelings of optimism about winning a case are not enough to establish an ineffective assistance of counsel claim. Although counsel stated that Hernandez-Perez's case seemed more favorable than previous trials he had done, Hernandez-Perez acknowledges that counsel nonetheless qualified this by adding that acquittal was uncertain. *See* Petition at 18. Hernandez-Perez claims that he believes his counsel "grossly overstat[ed]" the chance of acquittal. Traverse at 5. Still, the Eleventh Circuit has contrasted the "difference between expressing optimism about a defendant's chances at trial and guaranteeing that the defendant will win." *Teers v. United States*, 739 F. App'x 960, 966–67 (11th Cir. 2018) (comparing *Lafler v. Cooper*, 566 U.S. 156, 163 (2012), where "counsel

14

was deficient when he advised respondent to reject the plea offer on the grounds he *could not be convicted* at trial.").

Based on the circumstances alleged by Hernandez-Perez, this Court finds that Hernandez-Perez fails to establish a *Strickland* violation in connection with the rejected plea offer. *See Strickland*, 466 U.S. at 697. Therefore, Claim One of the Petition is without merit.

### C. Claim Three – Ineffective Appellate Counsel For Failure To Raise Judicial Bias Claim.

Lastly, Hernandez-Perez argues that his appellate counsel was ineffective for failing to raise a judicial bias claim regarding the state trial court judge. Petition at 19.

The record reflects that trial counsel filed a pretrial motion to disqualify the trial judge due to her apparent and pervasive bias against defense counsel during a status conference. *Id.* at 20; [ECF No. 18-2 at 103]. In the motion, defense counsel argued that the trial court judge should disqualify herself after she "made several remarks regarding defense counsel's attendance and preparedness," was impatient and irritated with delays, made "repeated admonishments from the bench toward defense counsel[,]" and on grounds that the trial judge's husband represented defense counsel in a criminal contempt case. [ECF No. 18-2 at 105]. The trial judge denied the motion on substantive and procedural grounds. *See id.* at 110–11 (collecting cases). Hernandez-Perez claims his appellate counsel was ineffective for not challenging the denial of the motion before the Fourth DCA, "[d]espite the fact that judicial bias is apparent on the face of the record." Petition at 20.

A petitioner establishes ineffective assistance of appellate counsel, where: "(1) appellate counsel's performance was deficient, and (2) but for counsel's deficient performance he would have prevailed on appeal." *Shere v. Sec'y, Fla. Dep't of Corr.*, 537 F.3d 1304, 1310 (11th Cir. 2008) (citing *Smith v. Robbins*, 528 U.S. 259, 285–86 (2000)). Appellate counsel's

15

performance is not deficient for failing to raise a claim on appeal "'unless that claim was plainly stronger than those actually presented to the appellate court.'" *Ward v. Dep't of Corr.*, No. 20-13797-C, 2021 WL 4772143, at *4 (11th Cir. Apr. 20, 2021) (quoting *Davila v. Davis*, 582 U.S. 521, 532 (2017)).

Florida Supreme Court precedent, which applied to the issue in the state court, provides that "[a] motion to disqualify a judge must be well-founded and contain facts germane to the judge's undue bias, prejudice, or sympathy." *Gregory v. State*, 118 So. 3d 770, 778 (Fla. 2013) (quotation marks and citation omitted). This requires "objectively reasonable" fear. *Sexton v. State*, 402 So. 3d 270, 281 (Fla. 2024) (citing *Gregory*, 118 So. 3d at 778), *reh'g denied* (Jan. 9, 2025), *reh'g denied,* 399 So. 3d 1102 (Fla. 2025), and *cert. denied sub nom. Sexton v. Fla.*, No. 24-6942, 2025 WL 2823833 (U.S. Oct. 6, 2025); *see also In re Walker*, 532 F.3d 1304, 1310–11 (11th Cir. 2008) ("The standard [for recusal] is whether an objective, fully informed lay observer would entertain significant doubt about the judge's impartiality.") (citation omitted).

Here, the motion to disqualify ultimately distills down to the trial judge making several comments regarding defense counsel's attendance and preparedness in pretrial hearings, and "the fact that [the] judge is married to an attorney who represented defense counsel for similar issues, give rise to a justifiable and reasonable fear that . . . Hernandez-Perez . . . will not receive a fair trial." *See* [ECF No. 18-2 at 106]. On the record before this Court, it cannot be said that appellate counsel's failure to confront the motion to disqualify was deficient since "judicial rulings alone almost never constitute a valid basis for a bias or partiality recusal motion*." See Liteky v. United States*, 510 U.S. 540, 556 (1994). Nor will a judge's "stern"

16

comments made during trial "that are critical or disapproving of, or even hostile to, counsel[,] the parties or their cases." *Id.* at 556.

In the motion to disqualify before the trial court, defense counsel was largely silent on just how the court's comments or how the trial judge's husband's representation of counsel would degrade Hernandez-Perez's constitutional protections. There needed to be a solid factual basis to recuse the judge without "unsupported, irrational or highly tenuous speculation." *See Wilkinson v. Tucker*, No. 12-80404-CIV, 2016 WL 8453691, at *2 (S.D. Fla. July 7, 2016) (White, Mag.) (citing *United States v. Cerceda*, 188 F.3d 1291 (11th Cir. 1999)). The record reveals no such solid facts. Appellate counsel did, however, raise two grounds concerning the trial court's jury instructions and failure to hold a *Daubert* hearing, which warranted a written opinion from the Fourth DCA that expressed its reasons for affirming Hernandez-Perez's conviction. *See* ECF No. 18-1 at 31, 93; *Ward*, 2021 WL 4772143, at *4. Under the circumstances presented, Hernandez-Perez has not shown that appellate counsel was deficient for failing to raise an attenuated claim based on the trial judge's failure to recuse. *See Ward*, 2021 WL 4772143, at *4; *Chandler v. Moore*, 240 F. 3d 907, 917–18 (11th Cir. 2001) (holding that the appellate counsel was not ineffective for not raising futile issues).

For the above-discussed reasons, this Court finds that Hernandez-Perez fails to satisfy the high standard applicable to § 2254 claims, and, therefore, each of the claims for relief asserted in the Petition is due to be denied. Thus, this Court must consider whether to issue a certificate of appealability.

### V.     CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to

the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* Rules Governing § 2254 Proceedings, Rule 11(b), 28 U.S.C. § 2254.

After review of the record, this Court finds that Hernandez-Perez is not entitled to a certificate of appealability. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To merit a certificate of appealability, a petitioner must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *see also Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001). Because this Court finds that the claims raised are clearly without merit, Hernandez-Perez cannot satisfy the *Slack* test and, therefore, a certificate of appealability shall not issue as to the claims asserted in the Petition.

## VI.   CONCLUSION

For the reasons set forth above, this Court finds that the Petitioner has failed to set forth an entitlement to *habeas* relief.[6]

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. The Petition for Writ of *Habeas Corpus* under 28 U.S.C. § 2254 [ECF No. 1] is **DENIED**.

2. A certificate of appealability is **DENIED**.

---

[6] Because the Court can "adequately assess [Petitioner's] claim[s] without further factual development," an evidentiary hearing is not required. *See Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003).

3. The Clerk of Court is **INSTRUCTED to CLOSE** this case.

4. All pending motions, if any, are **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at the Southern District of Florida, this 5th day of November 2025.

                **MELISSA DAMIAN**
                **UNITED STATES DISTRICT JUDGE**

cc: **Eleazer Hernandez-Perez**, *pro se*,
    Q60626
    Taylor Correctional Institution-Annex
    Inmate Mail/Parcels
    8629 Hampton Springs Road
    Perry, FL 32348

    **Rachael Kaiman**
    Office of the Attorney General
    1515 N. Flagler Drive, Suite 900
    West Palm Beach, FL 33401
    561-837-5000 ex172
    Email: rachael.kaiman@myfloridalegal.com